Hill vs. Williams.

IVEY HILL, plaintiff in error, vs. SHEPPARD K. WILLIAMS, defendant in error.

1. If one who has title to property, requests another to buy it for him, without asserting his claim to the property, he is estopped from denying, that he, from whom the requested purchase was to be made, had title.

Complaint in Trover, in Carroll Superior Court, tried before Judge DENNIS F. HAMMOND, at the April Term, 1861.

The facts of this case, were agreed on by the counsel for the parties, and are as follows :   On the 26th day of February, 1856, Ivey Hill instituted his action in Carroll Inferior Court, against Sheppard K. Williams, for the recovery of a yoke of oxen, worth $60 00.   Williams had received the profits of the oxen since the 1st day of March, 1855, of the yearly value of $30 00.   At December Term, 1857, of said Inferior Court, the case was tried and the jury found for the plaintiff, Hill, $40 00 for the oxen, and $10 00 for hire. Williams appealed to the Superior Court, and at the April Term, 1861, the case was tried on the appeal.   On the trial, it was shown by the evidence, that on the 9th of February, 1854, Hill, who then owned the oxen in dispute, bargained them to one Jeremiah Waters, in Randolph county, Alabama, for $75 00, taking the notes of Waters therefor, with the express agreement that the oxen should remain "Hill's oxen," until the notes were paid.   After the oxen were delivered to Waters under this contract, he moved over into Carroll county, in this State, and used and claimed the oxen as his own for about one year.   About the first of the year 1856, the oxen were in Williams' possession, and he was using them hauling stocks to his saw-mill.   Hill demanded the oxen from Williams, who refused to give them up.   With the exception of $15 00, the notes given by Waters to Hill for the oxen, were still unpaid.

On one occasion, whilst Waters was gone to market, Hill came to Williams and requested the latter to buy the oxen for him, so that he might get his pay from Waters.   Wil-

liams tried to make the purchase but failed. After that time Waters started to run away, when Williams followed him and bought the oxen from him, and paid for them, as Williams said, in a debt which Waters owed to him, Williams.

Upon this evidence, the presiding Judge, amongst other things charged the jury, " that if they believed, from the evidence, that the plaintiff induced the defendant to believe that he, the plaintiff, had no claim on the oxen, by requesting the defendant to buy the oxen for him, that he had a right to buy them for himself, and that the jury had a right in coming to a conclusion on this point, to consider all the circumstances connected with this particular case, and if the fact was true they ought to find for the defendant."

The jury returned a verdict for the defendant, and plaintiff's counsel at once moved for a new trial on the ground : That the verdict was contrary to evidence, contrary to law, contrary to the charge of the Court, and strongly and decidedly against the weight of the evidence in said case.

The Court refused the new trial, and the plaintiff now brings his writ of error to reverse that decision and judgment.

W. W. MERRELL, for plaintiff in error.

H. F. MERRELL, for defendant in error.

*By the Court*—LUMPKIN, J., delivering the opinion.

Hill, it seems, applied to Williams, the defendant, to purchase the oxen for him, to secure his debt from Waters. But how he was to make the purchase, does not appear whether he placed the notes in Williams' hands, that Waters gave for the oxen, for that purpose, the evidence does not show. Hill produced the notes on the trial, and it does not appear from the evidence that he informed Williams that he had them. Williams undertook to buy the oxen for Hill. This, the testimony shows, he could not do. Afterwards Waters attempted to run away; Williams followed him and bought the oxen for himself, in payment of a debt that Waters owed him. The charge of the Court upon this proof was, that if

Williams was induced to believe from the conversation with Hill, that he, Hill, had parted with the title to the oxen to Waters, that, then Williams had a right to buy the oxen for himself. The evidence warranted this charge, and it was sound law upon the facts proven on the trial. Suppose the title was to remain in Hill until Waters paid for the oxen. If Hill instructs Williams to buy the property from Waters, Hill is estopped from denying that Waters had title, setting up no title in himself. And this is true, admitting that Hill was only intending to secure his debt, provided, he did not communicate the facts to Williams. Suppose one stand by at a sheriff's sale and in order to quiet his title, bids for property, asserting no title in himself, and that is just what the testimony shows Hill did. He is estopped from denying that the property is defendant's. It would be different had he made known his own title, and that he only bid with a view to protect it.

Let the judgment be affirmed.