Mock *v.* Stuckey.

1. Where a defendant in execution, being present at a judicial sale of personal property levied upon as his own, bid off the same, and upon refusing to comply with his bid the property was again sold during the same day, the defendant being also present at the second sale, again bidding for the property and making no objection to the sale until after it had been completed, he thereby waived his right to afterwards deny the validity of the sale though it was not in all respects regular and lawful.

2. Where the vendor of personal property had reserved title until the property should be paid for by his vendee, and the latter, before paying the purchase money, sold the property to a third party, in whose hands it was seized under executions against the first purchaser based upon his purchase money notes for the property, the third party is legally excused from returning or paying for the property to his vendor, and may set up these facts in defense to an action brought against him by such vendor for the property or its value.

April 29, 1895.   Brought forward from the last term.

Bail-trover.   Before Judge Griggs.   Early superior court.   April term, 1894.

R. H. Powell & Son, for plaintiff in error.

W. D. Kiddoo and R. H. Sheffield, *contra.*

Simmons, Chief Justice.

It appears from the record, that Mallory Brothers sold to Stuckey certain machinery, taking his promissory

notes for the purchase money and reserving title until the notes should be paid. Stuckey having failed to pay the notes at maturity, Mallory Brothers brought suit and obtained judgment thereon, and the machinery was levied upon under an execution issuing from this judgment. The plaintiffs failed, however, to make, file and have recorded in the clerk's office a bill of sale of the property to the defendant before the levy, as required by the act of 1887 (Acts 1887, p. 62). The property was duly advertised by the sheriff, and on the day of sale was bid off by Stuckey, but he failed to comply with his bid, and the property was on the same day again exposed for sale by the sheriff. Stuckey was present at that sale also, and again bid for the property, but it was finally sold to Mallory Brothers as the highest and best bidders at the sale. So far as appears, no objection to the sale was made at that time by Stuckey on the ground that the plaintiffs had failed to file a bill of sale in the clerk's office. The only objection then made by him was made after the sale, and that objection was that the legal hours of sale had expired before the second sale took place. On this question there was a conflict of evidence, but according to the weight of the evidence the second sale occurred before four o'clock P.M., and therefore was not later than the legal hours of sale. There is no complaint that the property did not bring a fair price at the sale. After the sale the machinery was delivered by the sheriff to the purchasers, and they sold it to Mock. Subsequently Stuckey brought an action of trover against Mock for the recovery of the property, and obtained a verdict therefor; and Mock made a motion for a new trial, which was overruled, and he excepted.

1. On the trial of the case the court charged the jury, that if Mallory Brothers & Co. sold the property to Stuckey and took notes reserving the title in themselves,

before they could sell the property under a judgment on the notes they would have to file a bill of sale in the office of the clerk of the superior court, and if they did not file it the sale was void and passed no title to the purchaser thereat. Under the facts above recited, we think this instruction was erroneous. While the act of 1887 points out the mode by which a vendor of personal property who retains title may levy on and sell the same for the unpaid purchase money, and while it is true that Mallory Brothers did not pursue this mode, still, under the facts of this case, we do not think the sale made by the sheriff was void as between these parties; but even if it was void because of the failure of the plaintiffs in execution to comply with the act above referred to, we hold that Stuckey by his conduct waived such compliance, and was thereby estopped from afterwards setting up the illegality of the sale. He knew or ought to have known whether a bill of sale of the machinery to him had been filed in the clerk's office; it is not denied that he did know; yet when the property was brought to sale under the execution, he attended and participated in the sale, first bidding in the property himself, and again becoming a bidder at the second sale by the sheriff. Where one is present when his property is exposed for sale by the sheriff, and makes no objection to the sale on the ground of its illegality or for any other reason, and participates in the bidding, we think he waives his right to object afterwards, and is estopped from recovering the property or its value from the purchaser, though the sale may have been illegal and the sheriff without authority to make it. In the case of *Allen* v. *Brown*, 83 *Ga.* 161, it appeared that Whitley had sold a mule to Allen, taking a lien on it for the purchase money, and that he subsequently foreclosed the lien before a magistrate who had no jurisdiction of the matter, and under an execution issued by this mag-

istrate, caused the mule to be levied upon and advertised for sale. Allen brought the mule to the place of sale, said that it was Whitley's property and if he wanted to sell it he could do so, and stood by at the sale and saw it sold to Whitley. He subsequently brought trover against Whitley to recover the mule, but this court held that he was estopped from recovering the property or its value, although the officer had no authority to sell. See also *Reichert* v. *Voss*, 78 *Ga.* 54; *O'Kelley* v. *Gholston*, 89 *Ga.* 1; *Tribble* v. *Anderson*, 63 *Ga.* 32; 2 Herman on Estoppel, §1059.

2. It was contended that inasmuch as Mock purchased the property from Stuckey, he could not dispute the latter's title and make the defenses set up in his pleas. Ordinarily a vendee cannot dispute his vendor's title, but the facts of the present case, we think, take it out of the general rule. As we have seen, Mallory Brothers, who sold the property to Stuckey, reserved title until the purchase money should be paid, and Stuckey, without having paid the purchase money, sold the property to Mock, in whose hands it was seized under an execution obtained by Mallory Brothers against Stuckey based upon his purchase money notes; and Mallory Brothers, having purchased the property at the sale under this execution, sold it to Mock. Under this state of facts, we think it is clear that Mock was not bound to return the property to Stuckey or to pay him the purchase money.          *Judgment reversed.*